IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-739

Filed: 19 March 2019

Durham County, 16 CVS 5386

FEEASSCO, LLC, and JW COMPANY, LLC, Plaintiff,

v.

THE STEEL NETWORK, INC., Defendant.

Appeal by Defendant from order entered 2 November 2017 by Judge Elaine M. O'Neal and two orders entered 23 January 2018 by Judge Orlando F. Hudson, Jr., in Durham County Superior Court. Heard in the Court of Appeals 31 January 2019.

> *Bugg & Wolf, P.A., by William R. Sparrow and Joseph R. Shuford, for Plaintiffs-Appellees.*

> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Clint S. Morse, for Defendant-Appellant.*

COLLINS, Judge.

Defendant appeals from three discovery orders entered in Durham County Superior Court. The underlying case involves a sales commission dispute between Plaintiffs and Defendant over commissions allegedly owed to Plaintiffs by Defendant. In the first order (November Order), the trial court granted Plaintiffs' motion to compel discovery. In the second order (Sanctions Order), the trial court granted Plaintiffs' motion for sanctions based on Defendant's failure to comply with the

November Order. In the third order (Denial Order), the trial court denied Defendant's motion to compel discovery and motion for sanctions.

The November Order did not unreasonably expand the manner of discovery production, and the trial court did not abuse its discretion in entering that order. Moreover, the trial court did not abuse its discretion by striking Defendant's answer and entering judgment for Plaintiffs on liability pursuant to the Sanctions Order, and the order did not violate Defendant's due process rights. Finally, the Denial Order is an interlocutory order that does not affect a substantial right and we dismiss Defendant's appeal from that order.

## I. Procedural History and Factual Background

In 2015, Feeassco, LLC, and JW Company, LLC, (Plaintiffs) entered into separate contracts with The Steel Network, Inc., (Defendant) wherein Plaintiffs would sell and solicit orders for Defendant's products within assigned territories. The contracts included a two-tiered commission structure, which paid different rates for "Basic Commission" and "Growth Commission." Plaintiffs commenced this action on 12 December 2016, asserting claims for breach of contract, quantum meruit, unfair and deceptive trade practices, and attorneys' fees. Plaintiffs alleged, amongst other things, that over the nearly two years under the contract, Defendant improperly calculated commissions payments, stopped paying commissions, and failed to provide contractually required commissions statements and sales reports.

Also on 12 December 2016, Plaintiffs served Defendant with a "First Set of Interrogatories" and a "First Requests for Production of Documents." Defendant objected to each interrogatory as "overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence[,]" and provided minimal information for some interrogatories.

Defendant objected to each request for production as follows:

> [Defendant] objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, [Defendant] will produce or make available for inspection and copying nonprivileged documents responsive to this request within its possession at a mutually convenient time and place after entry of an appropriate confidentiality agreement and protective order.

Defendant filed an Answer on 13 February 2017.

On 13 March 2017, Defendant responded to the First Requests for Production of Documents with a one-page spreadsheet entitled "Sales Rep Summary - December 2016." On 8 May 2017, Defendant produced three more documents, one of which was a copy of the "Sales Rep Summary - December 2016." Defendant produced 430 documents on 19 June 2017.

The parties attempted mediation in September 2017, but were unable to reach an agreement. Plaintiffs filed a motion to compel discovery on 3 October 2017. In late October and early November 2017, Defendant produced approximately 19,000 pages of documents. The trial court heard Plaintiffs' motion to compel on 2 November

2017.  At the conclusion of the hearing, the trial court granted Plaintiffs' motion, ordering Defendant to restate its responses to the First Set of Interrogatories without objection, except as to privilege, and to comply fully with Plaintiffs' First Requests for Production by 20 November 2017.  This November Order required Defendant to produce, amongst other things: correspondence related to Plaintiffs; all "customer orders, invoices, sales confirmations and return forms for Plaintiffs' territories"; commission statements and sales reports; Defendant's state and federal tax returns for 2015 and 2016; and financial statements for 2015 and 2016.

"As part of complying fully with Plaintiffs' First Requests for Production," the November Order also required Defendant to submit to an audit of its sales data within its electronic sales and accounting systems by an independent accounting firm selected by Defendant on or before 20 November 2017.  It further required Defendant to make someone available to guide the auditor through Defendant's electronic systems.  The November Order allowed Plaintiffs' counsel to be present at the audit, but prohibited other Plaintiffs' representatives from being present.  In auditing the electronic systems, the auditor was to have "access to all information that is 'reasonably calculated to lead to the discovery of admissible evidence' within the meaning of Rule 26 of the NC Rules of Civil Procedure."  The scope of the audit was "limited to data, documents[,] and information regarding or related to the product

categories identified in the Plaintiffs' sales representative agreements and to sales recorded from 2014 through the date of the audit in Plaintiffs' sales territory only."

On 19 December 2017, Defendant moved to compel Plaintiffs' answer to Defendant's interrogatory number 3 for failure to provide a complete damages calculation. Defendant also moved for sanctions, asserting Plaintiffs had not targeted discovery to the needs of the case and sought discovery disproportionately large to any amount in controversy.

On 28 December 2017, Plaintiffs moved for an order sanctioning Defendant for violations of the November Order. Following an 8 January 2018 hearing on the parties' motions, the trial court granted Plaintiffs' motion for sanctions (Sanctions Order) and denied Defendant's motion to compel and motion for sanctions (Denial Order). Defendant appeals.

## II. Issues

Defendant raises four issues on appeal: (1) the trial court erred when it ordered Defendant to submit to an audit of its electronic systems in the November Order; (2) the trial court's findings of fact and conclusions of law do not support the entry of the Sanctions Order; (3) the Sanctions Order violated Defendant's due process rights; and (4) the trial court erred by denying Defendant's motion to compel and motion for sanctions.

## III. Jurisdiction

We first address our jurisdiction to hear the appeals from the November Order, Sanctions Order, and Denial Order as all three orders are interlocutory. *See Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) (noting that an interlocutory order "does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy"). Generally, an appeal from an interlocutory order will be dismissed by this Court unless the trial court has entered certification under N.C. Gen. Stat. § 1A-1, Rule 54(b), or the appeal affects a substantial right which would be jeopardized absent a review prior to a final determination on the merits. *In re Pedestrian Walkway Failure*, 173 N.C. App. 254, 262, 618 S.E.2d 796, 802 (2005) (citation omitted).

Generally, a discovery order, including an order compelling discovery, is not immediately appealable. *Id.* (citation omitted). However, when a discovery order is enforced by sanctions pursuant to N.C. Gen. Stat. § 1A-1, Rule 37(b), the order affects a substantial right and is immediately appealable. *Id.* (citation omitted). The appeal tests the validity of both the discovery order and the sanctions imposed. *Id.* (citation omitted). Moreover, although it is interlocutory, a party may appeal from an order imposing sanctions by striking its answer and entering judgment as to liability. *Vick v. Davis*, 77 N.C. App. 359, 360, 335 S.E.2d 197, 198 (1985).

Here trial court's Sanctions Order struck Defendant's answer and entered judgment for Plaintiffs as to liability as sanctions pursuant to Rule 37(b) for alleged

violations of the November Order compelling discovery. Accordingly, the November Order as enforced by the Sanctions Order, and the Sanctions Order striking Defendant's answer, affect a substantial right and are immediately appealable, and this appeal testing the validity of both the November Order and the Sanctions Order is properly before us. *Id.*

The Denial Order denies Defendant's motion to compel and motion for sanctions. Again, "[d]iscovery orders are generally not immediately appealable because they are interlocutory and do not affect a substantial right that would be lost if the ruling were not reviewed before final judgment." *Stokes v. Crumpton*, 369 N.C. 713, 719, 800 S.E.2d 41, 45 (2017) (quotation marks, brackets, and citations omitted). However, orders denying discovery are immediately appealable when "the desired discovery would not have delayed trial or have caused the opposing party any unreasonable annoyance, embarrassment, oppression or undue burden or expense, and if the information desired is *highly material to a determination of the critical question* to be resolved in the case." *Id.* (quotation marks and citations omitted).

Information desired is highly material to the determination of the critical question where the information is "essential" to proving the elements of a claim, *cf. Harbour Point Homeowners' Ass'n v. DJF Enters.*, 206 N.C. App. 152, 163, 697 S.E.2d 439, 447 (2010), and withholding that information would "effectively preclude[]" the

requesting party from making or defending that claim, *cf. Tennessee-Carolina Transp. Inc. v. Strick Corp.*, 291 N.C. 618, 625, 231 S.E.2d 597, 601 (1977).

Defendant's motion requested the trial court to compel Plaintiffs to "fully and completely respond to Interrogatory No. 3." Interrogatory No. 3 requested Plaintiffs to "[i]dentify and describe all damages claimed by you in as much detail as you are able to provide, including: (a) a complete description of the method of calculation of each category of damages; [and] (b) a detailed description of each item of individual damages . . . ." Plaintiffs responded as follows:

> JWC is claiming damages for breach of contract, quantum meruit, unfair and deceptive trade practices and attorneys' fees. In particular, [Defendant] has failed to properly calculate and pay the growth commission due for both 2015 and 2016. This includes making improper deductions, failing to report or credit all sales within JWC's territory, failing to make payments on a monthly basis and failing to make any payments for 2016. The exact amount due cannot be determined as of the date of this response due to [Defendant]'s failures to allow an audit per the contract and to produce documents in a timely and complete manner during the lawsuit. [Defendant] has also failed to pay all of the basic commission due for 2016. Interest is due on all overdue growth and basic commission payments at the legal rate allowed by law until paid. There will also be additional commission due for 2017 and 2018 per Section 7 of the contract. The method by which JWC calculates its damages is as follows: the total commission due to JWC as provided in JWC's contract with [Defendant] minus the payments [Defendant] has already made to JWC. JWC's contract with [Defendant] may be found at TSN_0020113 together with TSN_0011814. Further, due to [Defendant]'s unfair and/or deceptive trade practices, these damages should be trebled and attorneys' fees and costs added. Finally, JWC is entitled to recover its attorney fees, costs and expenses incurred in

having to file a suit to enforce the parties' contract. These fees, costs and expenses continue to accrue each day this lawsuit continues.[1]

Defendant asserted that "Plaintiffs' argument as to why it cannot calculate their alleged damages is unfounded" as Defendant had already given them all the information needed to make such calculations. While Plaintiffs' damages calculations are "essential" to Plaintiffs proving their claims for breach of contract, quantum meruit, and unfair and deceptive trade practices, Defendant essentially conceded that the information necessary for both Plaintiff and Defendant to calculate those damages is in Defendant's possession as "Defendant had already given them all the information." Moreover, Plaintiffs' inability or refusal to provide the requested calculations to Defendant would not "effectively preclude[]" Defendant from defending against Plaintiffs' claims, as Defendant was in as good or better position than Plaintiffs to make those calculations. Accordingly, the information desired is not "*highly material to a determination of the critical question* to be resolved in the case[,]" *Stokes*, 369 N.C. at 719, 800 S.E.2d at 45*,* and the order denying Defendant's motion to compel does not affect a substantial right. Defendant's appeal from the Denial Order denying its motion to compel is dismissed.

Defendant's brief does not address the interlocutory nature of the denial of its motion for sanctions and does not contain "facts and argument to support appellate

---

[1] Plaintiffs' responses for JW Company, LLC, (JWC) and Feeassco, LLC, were substantively the same.

review on the ground that the challenged order affects a substantial right." N.C. R. App. P. 28(b)(4) (2018). "It is not the duty of this Court to construct arguments for or find support for appellant's right to appeal from an interlocutory order; instead, the appellant has the burden of showing this Court that the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits." *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994). Defendant's appeal from Denial Order denying its motion for sanctions is dismissed.

## IV. Discussion

*A. November Order*

Defendant first argues the trial court erred when it ordered Defendant to submit to an audit of its electronic systems in the November Order. We disagree.

"It is a general rule that orders regarding matters of discovery are within the discretion of the trial court and will not be upset on appeal absent a showing of abuse of discretion." *Hudson v. Hudson*, 34 N.C. App. 144, 145, 237 S.E.2d 479, 480 (1977). An abuse of discretion occurs when the trial court's ruling "is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

Discovery rules are designed to facilitate the disclosure of any relevant and material information before trial which allows the parties to narrow and sharpen the

issues and facts required for trial. *Am. Tel. & Tel. Co. v. Griffin*, 39 N.C. App. 721, 726, 251 S.E.2d 885, 888 (1979) (citation omitted). Further, "the discovery rules 'should be constructed liberally' so as to substantially accomplish their purposes." *Id.* at 727, 251 S.E.2d at 888 (citation omitted).

Rule 34 of our Rules of Civil Procedure provides:

> Any party may serve on any other party a request (i) to produce and permit the party making the request . . . to inspect and copy, test, or sample any designated documents, electronically stored information, or tangible things . . . which are in the possession, custody or control of the party upon whom the request is served; or (ii) to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon, within the scope of Rule 26(b).

N.C. Gen. Stat. § 1A-1, Rule 34(a) (2017).

Subsection (i) governs requests for production of documents, electronically stored information, and other tangible items while subsection (ii) governs entry upon property for "inspection and measuring, surveying, photographing, testing, or sampling the property . . . ." *Id.* If, "in response to a request for inspection submitted under Rule 34, [a party] fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order . . . compelling inspection in accordance with the request." N.C. Gen. Stat. § 1A-1, Rule 37(a)(2) (2017).

Defendant concedes it did not comply with Plaintiffs' original requests for production, noting in its brief: "At the hearing on Plaintiffs' Motion to Compel, [Defendant] . . . acknowledged to the trial court that it should have included all sales within Plaintiffs' Territories as sought in Plaintiffs' initial requests." Defendant does not take issue with the trial court's order compelling Defendant to produce physical copies of the requested documents. Defendant argues, however, that because "Plaintiffs did not serve a request under Rule 34(a)(ii) to gain access to [Defendant's] electronic systems to audit [Defendant's] sales in their respective Territories[,]" the trial court had no legal authority to require Defendant to submit to an onsite audit of its electronic systems. Defendant's argument is misguided.

Plaintiffs requested production of "documents in the possession, custody and control of Defendant pursuant to Rule 34 of the applicable Rules of Civil Procedure." Rule 34(a)(i) does not specify the manner in which documents may be requested or may be compelled to be produced. While Plaintiffs requested that all responsive documents be produced at the law offices of Bugg & Wolf, P.A., upon Defendant's failure to comply with the request, the trial court ordered Defendant, "[a]s part of complying fully with Plaintiffs' First Requests for Production[,]" to submit to an audit of its electronic systems to gain access to the requested information. The trial court's order did not compel Defendant to allow Plaintiffs' entry upon Defendant's property for "inspection and measuring, surveying, photographing, testing, or sampling the

property . . . [,]" N.C. Gen. Stat. § 1A-1, Rule 34(a), but instead compelled Defendant to allow electronic systems inspection as an alternative manner for ensuring the production of the documents requested. The trial court was well-within its discretion to order this alternative means of production. *See Green v. Maness*, 69 N.C. App. 403, 316 S.E.2d 911 (1984) (holding the trial court did not abuse its discretion when it ordered additional discovery via oral depositions of defendant's expert witnesses). Defendant's argument is overruled.

*B. Sanctions Order - Abuse of Discretion Claim*

Defendant next argues the trial court abused its discretion when it granted Plaintiffs' motion for sanctions. Specifically, Defendant argues the trial court's findings of fact do not support the conclusion that Defendant violated the November Order. We disagree.

We review the Sanctions Order, granting Plaintiffs' motion for sanctions, for an abuse of discretion. *Graham v. Rogers*, 121 N.C. App. 460, 465, 466 S.E.2d 290, 294 (1996) ("A trial court's award of sanctions under Rule 37 will not be overturned on appeal absent an abuse of discretion."). The determination of whether to strike an answer and enter default judgment because of noncompliance with discovery rules "may be reversed for abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *Essex Grp., Inc. v. Express Wire Servs. Inc.*, 157 N.C. App. 360, 362, 578 S.E.2d 705, 707 (2003)

(affirming sanctions order striking defendants' answer, entering default judgment against defendants, and ordering defendants to pay costs and attorney fees).

N.C. Gen. Stat. § 1A-1, Rule 37, states in pertinent part: "If a party . . . fails to obey an order to provide or permit discovery, including an order made under [Rule 37(a)] . . . a judge of the court in which the action is pending may make such orders in regard to the failure as are just . . . ." N.C. Gen. Stat. § 1A-1, Rule 37(b)(2). One of the options available to a trial court for addressing violations of an order to compel discovery under Rule 37(a) is the entry of an order "striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]" N.C. Gen. Stat. § 1A-1, Rule 37(b)(2)(c). Thus, by virtue of its literal language, N.C. Gen. Stat. § 1A-1, Rule 37, authorizes a trial court to impose sanctions, including striking an answer and entering judgment as to liability, upon a party for discovery violations. *See Badillo v. Cunningham*, 177 N.C. App. 732, 734, 629 S.E.2d 909, 910 (2006).

"According to well-established North Carolina law, a broad discretion must be given to the trial judge with regard to sanctions." *Batlle v. Sabates*, 198 N.C. App. 407, 417, 681 S.E.2d 788, 795 (2009) (quotation marks and citation omitted). "A trial court does not abuse its discretion by imposing a severe sanction so long as that sanction is 'among those expressly authorized by statute' and there is no 'specific

evidence of injustice.'" *Id.* at 417, 681 S.E.2d at 795 (*quoting Roane-Barker v. Se. Hosp. Supply Corp.*, 99 N.C. App. 30, 37, 392 S.E.2d 663, 667 (1990)). However, before imposing a severe sanction such as striking an answer and entering judgment as to liability, a trial court must consider the appropriateness of less severe sanctions. *See Badillo*, 177 N.C. App. at 734, 629 S.E.2d at 911.

In its Sanctions Order, the trial court made the following relevant findings of fact:

> 1. On November 1, 2017, the Honorable Elaine M. O'Neal entered an order granting Plaintiffs' Motion to Compel Discovery from Defendant ("November Order").
>
> 2. The November Order was granted because of Defendant's failure to properly respond to Plaintiffs' First Interrogatories and First Requests for Production ("First RFPs") over the course of more than ten months, from December 2016 through October 2017.
>
> . . . .
>
> 7. Defendant did not select an accounting firm for the onsite audit by 5:00 p.m. on November 20, 2017, the deadline in the November Order.
>
> 8. Defendant did not select an accounting firm until after Plaintiffs informed Defendant that it missed the deadline.
>
> 9. Defendant failed to pay Plaintiffs' reasonable expenses associated with preparing, filing, and arguing Plaintiffs' Motion by 5:00 p.m. on November 20, 2017, as required by the Order.
>
> . . . .

11. Defendant did not pay Plaintiffs' reasonable expenses associated with preparing, filing, and arguing Plaintiffs' Motion until after Plaintiffs reminded Defendant of its obligation. Plaintiffs did not receive Defendant's check until December 1, 2017.

12. During the onsite audit, the independent accountant made the following requests of Defendant:

> a. Reports of Defendant's sales for all of Defendant's territories for 2014 through the date of the Onsite Audit;
>
> b. A digital copy of Defendant's QuickBooks;
>
> c. The spreadsheets and other work papers with Defendant's commission calculations for the Plaintiffs at the time Defendant paid the Plaintiffs;
>
> d. Defendant's final and signed tax returns for 2015 and 2016; and
>
> e. Defendant's sales tax reports for 2015 and 2016.

13. The accountant's requests were within the scope of the November Order, specifically paragraph 7(g), and the parameters for the audit provided by Plaintiffs to Defendant. Defendant never objected to Plaintiffs' parameters.

14. These requests were necessary for the independent accountant to complete the audit.

15. Defendant did not provide the independent accountant with the information he requested.

16. During the onsite audit, Defendant designated Mr. Sean Wilson as the person with knowledge of its accounting systems.

17. Mr. Wilson left the audit, without explanation, for nearly four hours.

18. Mr. Wilson's departure made it impossible for the independent accountant to complete the audit.

19. Paragraph 7(e) of the November Order provided that the independent accountant would be the person to personally review Defendant's accounting systems.

20. At the audit, Mr. Wilson did not allow the accountant to review the accounting system himself, but instead made the accountant review the accounting systems through Mr. Wilson.

21. Defendant also refused to allow Plaintiffs to obtain copies of the data and information retained by the accountant during the audit.

22. Defendant's behavior during the onsite audit prevented the independent accountant from obtaining the data and information necessary to complete the onsite audit as contemplated by the November Order.

23. Plaintiffs propounded a total of six interrogatories to Defendant.

24. Plaintiffs' interrogatories 3 and 4 requested that Defendant identify Defendant's customers in Plaintiffs' territories for 2015 through the date of Defendant's response.

25. Defendant replied identically to both Interrogatory 3 and 4 as follows:

> Nonprivileged information responsive to this interrogatory can be derived or ascertained from certain nonprivileged business document (sic) of [Defendant] that [Defendant] will produce - subject to an appropriate confidentiality agreement and

protective order - by October 20, 2017 (to the extent not already produced), and the burden of deriving or ascertaining such information is substantially the same for Plaintiffs as for [Defendant].

26. The burden of deriving or ascertaining the information is not the same for Plaintiffs and Defendant. Defendant can quickly derive or ascertain the requested information from its sales and accounting systems, while Plaintiffs would need to sort through Defendant's production to derive or ascertain this information. Defendant's responses were not proper and amounted to *de facto* objections to Plaintiffs' interrogatories and were non-responsive.

27. Defendant did not produce the following documents as required by the November Order:

a. Consolidated reports of invoices paid for all customer business within Plaintiffs' territories;

b. All correspondence regarding or related to Plaintiffs; and

c. All customer orders and invoices for Plaintiffs' territories.

28. Defendant did provide consolidated reports of invoices to the independent accountant at the onsite audit. However, Defendant did not provide those reports to Plaintiffs and did not allow the accountant to provide them to Plaintiffs.

29. Defendant has not produced all its sales reports for the Plaintiffs' territories as required by the November Order. Defendant produced many copies of these reports to the accountant during the onsite audit . . . . Defendant did not allow Plaintiffs to have these reports and did not allow the accountant to provide them to Plaintiffs.

30. Defendant did not produce its signed 2015 or 2016 state and federal tax returns to either Plaintiffs or the accountant.

31. Defendant designated every single document it produced as confidential.

32. Defendant's failure to comply with the November Order was not substantially justified and there are no circumstances making an award of expenses unjust.

Defendant does not challenge these findings; thus, they are binding on appeal. *See Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.") (citations omitted). These findings of fact amply support the trial court's conclusion that "Defendant failed to obey the November Order on numerous occasions, and was in contempt of that Order" and that "[u]nder these facts, an order of sanctions against Defendant, pursuant to Rule 37 . . . would be just."

Defendant argues that when the electronic systems audit was performed, the auditor increased the scope of the audit allowed under the November Order. Defendant thus argues that it cannot be in violation of the November Order for failing to acquiesce to this increased scope. However, the November Order stated: "In auditing the electronic systems, the [auditor] shall be allowed access to all information that is 'reasonably calculated to lead to the discovery of admissible evidence' within the meaning of Rule 26 of the NC Rules of Civil Procedure." As

explained above, the trial court did not abuse its discretion in the November Order by ordering an audit of Defendant's electronic systems, and the findings of fact do not support a conclusion that the audit went beyond the scope of the audit as specified in the November Order.  Nonetheless, even if findings of fact regarding the electronic systems audit are disregarded, the trial court's remaining findings of fact amply support its conclusions that "Defendant failed to obey the November Order on numerous occasions, and was in contempt of that Order" and that "[u]nder these facts, an order of sanctions against Defendant, pursuant to Rule 37 . . . would be just." Additionally, the trial court concluded:

> The Court has carefully considered each of the foregoing facts, as well as their cumulative effect, and has also considered the available sanctions for such misconduct, including lesser sanctions.  After thorough consideration, the Court concludes that sanctions less severe than striking Defendant's answer and entering judgment for Plaintiffs as to liability only would not be adequate given the seriousness of the misconduct described above.

Accordingly, the trial court's findings of fact support the conclusion that Defendant violated the November Order on numerous occasions.  Moreover, the trial court considered lesser sanctions prior to striking Defendant's answer and entering judgment for Plaintiffs as to liability, sanctions which are expressly authorized by statute.  Thus, the trial court did not abuse its discretion in the Sanctions Order by granting Plaintiffs' motion for sanctions.

*C. Sanctions Order - Due Process Claim*

Defendant next agues the trial court's Sanctions Order violates its due process rights. We disagree.

We repeat that this Court may overturn a trial court's order of sanctions only in the event of an abuse of discretion. *Essex Grp., Inc.*, 157 N.C. App. at 362, 578 S.E.2d at 707. "A trial court may be reversed for abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *Id.* (quotation marks and citation omitted). Here, the numerous facts found by the trial court justify its imposition of sanctions on Defendant. Sanctions such as striking answers and entering default judgment are well within the court's discretion in cases involving an abuse of discovery rules by one party. *Kewaunee Sci. Corp. v. E. Sci. Prods.*, 122 N.C. App. 734, 738, 471 S.E.2d 451, 453 (1996) (citing *Roane-Barker*, 99 N.C. App. at 36, 392 S.E.2d at 667.)

Defendant first asserts that because it made a diligent and good faith effort to comply with the order, "[i]mposing drastic sanctions on [Defendant] under these circumstances, especially considering the limited amount in controversy, violated [Defendant]'s due process rights." We disagree.

The unchallenged findings of fact do not support Defendant's assertion of a diligent and good faith effort. To the contrary, the findings of fact demonstrate a protracted unwillingness to respond to Plaintiffs' discovery requests or comply with the trial court's discovery order based, at least in part, on Defendant's unsupported

insistence that Plaintiffs' and the trial court's actions were excessive, "considering the limited amount in controversy[.]"

Defendant further contends, "even assuming arguendo that [Defendant] could be characterized as less than diligent," due process does not permit a trial court to strike its answer as a discovery sanction because the facts in this case do not support a *Hammond Packing* presumption of bad faith. *See Hammond Packing Co. v. Arkansas*, 212 U.S. 322 (1909). Again, we disagree.

"Rule 37(b)(2)(A)[2] itself embodies the standard established in *Hammond Packing Co. v. Arkansas* . . . for the due process limits on such rules." *Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 705 (1982). In *Hammond Packing*, "the Court held that it did not violate due process for a state court to strike the answer and render a default judgment against a defendant who failed to comply with a pretrial discovery order." *Id.* "[I]n instances of default judgment the 'preservation of due process [is] secured by the presumption that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense.'" *Id.* (quoting *Hammond Packing*, 212 U.S. at 350-51).

"A proper application of Rule 37(b)(2) will, as a matter of law, support such a presumption." *Ins. Corp. of Ir.*, 456 U.S. at 706 (*citing Societe Internationale v.*

---

[2] Although *Hammond Packing* involves the Federal Rule of Civil Procedure 37(b)(2)(A), this rule is essentially identical to our North Carolina Rule of Civil Procedure 37(b)(2).

*Rogers*, 357 U.S. 197, 209-13 (1958)). "If there is no abuse of discretion in the application of the Rule 37 sanction, . . . then the sanction is nothing more than the invocation of a legal presumption, or what is the same thing, the finding of a constructive waiver." *Id.*

In section IV. 2., above, we concluded the trial court did not abuse its discretion in the application of the Rule 37 sanction. The trial court's copious findings of fact amply supported the trial court's conclusions that "Defendant failed to obey the November Order on numerous occasions, and was in contempt of that Order[;]" that "[u]nder these facts, an order of sanctions against Defendant, pursuant to Rule 37 . . . would be just[;]" and that "[a]fter thorough consideration, the Court concludes that sanctions less severe than striking Defendant's answer and entering judgment for Plaintiffs as to liability only would not be adequate given the seriousness of the misconduct described above." The trial court's proper application of Rule 37(b)(2), as a matter of law, supported the "presumption of fact as to the bad faith and untruth of an answer begotten from the suppression or failure to produce the proof ordered . . . ." *Hammond Packing,* 212 U.S. at 351. Accordingly, as in *Hammond Packing*, it did not violate due process for the trial court in this case to strike Defendant's answer and enter judgment in favor of Plaintiffs as to liability based on Defendant's failure to comply with the November Order.

Defendant finally argues that the sanction striking its answer and establishing liability in favor of Plaintiffs violated Defendant's due process rights because the sanction was not "'specifically related' to the issue upon which discovery was sought and refused[,]" as required by *Insurance Corporation of Ireland*. However, Defendant overlooks our Rule 37 and misquotes *Insurance Corporation of Ireland*, both of which refer to a "claim" as opposed to an "issue."

Rule 37 provides that the trial court may issue "[a]n order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order." N.C. Gen. Stat. § 1A-1, Rule 37(b)(2). This Court has broadly interpreted that language, even upholding a finding of fact establishing an entire negligence claim on behalf of the party obtaining the order. *Edwards v. Cerro*, 150 N.C. App. 551, 557–58, 564 S.E.2d 277, 281 (2002). Likewise, *Insurance Corporation of Ireland*, which involves Federal Rule 37, explains that "the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ir.*, 456 U.S. at 707.

The particular claims at issue in the November Order included breach of contract, quantum meruit, and unfair and deceptive trade practices. The sanction striking Defendant's answer and establishing liability in favor of Plaintiffs specifically related to those claims. Accordingly, the Sanctions Order striking

Defendant's answer and establishing liability in favor of Plaintiffs did not violate Defendant's due process rights.

## V. Conclusion

The November Order and the Sanctions Order are affirmed.  Defendant's appeal from the Denial Order is dismissed.

AFFIRMED IN PART; DISMISSED IN PART; AND REMANDED.

Judges TYSON and ZACHARY concur.